FILED
SUPERIOR COURT
OF GUAM

2014 OCT 21 PM 4: 37

CLERK OF COURT
BY:_____

**IN THE SUPERIOR COURT OF GUAM**

| | |
|---|---|
| **GOVERNMENT OF GUAM** ) | **Case No. CV0340-12** |
| Plaintiff, ) | |
| ) | |
| ) | **DECISION AND ORDER** |
| **vs.** ) | |
| ) | **Plaintiff's Motion for Summary** |
| ) | **Judgment & Defendant's Motion to** |
| **DRC, INC.,** ) | **Dismiss** |
| ) | |
| Defendant. ) | |

## INTRODUCTION

This matter came before the Honorable Anita A. Sukola on April 29, 2014, on the Government of Guam's ("Plaintiff") Motion for Summary Judgment. The Court also addresses DRC Inc.'s ("Defendant") Motion to Dismiss, which was stayed pending the outcome of a related case (CV894-04), and the issue of claim preclusion. Assistant Attorney General David J. Highsmith represents Plaintiff. Attorney Delia L. Wolff represents Defendant. For the reasons set forth below, the Court **DENIES** Plaintiff's Motion for Summary Judgment and **GRANTS** Defendant's Motion to Dismiss.

## BACKGROUND

This case dates back to 1997 when Typhoon Paka struck Guam, leaving massive damage in its wake. Per its contract with Plaintiff, Defendant assisted the debris cleanup efforts. Plaintiff, however, was ultimately unable to pay Defendant. Defendant subsequently filed CV894-04 pursuant to the Government Claims Act to collect the $7,049,219.08 owed to it. While the claim was still pending, Congress apportioned more than $11 million to Plaintiff for

the "uncompensated" costs of Paka. Using this money, on March 14, 2008 an authorized representative of the Governor memorialized a settlement agreement with Defendant requiring Defendant to dismiss its claim with prejudice and Plaintiff to pay Defendant $11,132,160.00. Neither the court nor the Attorney General was aware of the agreement.

In a Decision and Order on February 1, 2011, the Honorable Alberto C. Lamorena III set aside that settlement agreement citing a violation of the Government Claims Act. (Decision and Order, Feb. 1, 2011, 3-4). Defendant later objected to Judge Lamorena's fitness to preside over the case. In response, Judge Lamorena filed his consent and non-opposition to the objection, and recused himself. The case then went before the Honorable Michael J. Bordallo.

With CV894-04 still open, Plaintiff filed its Complaint in the instant case on March 13, 2012 "from an abundance of caution." Plaintiff alleges that the above settlement agreement was illegally executed "either by mistake, deceit, negligent or intentional misrepresentation, or connivance or conspiracy with the GovGuam official or officials responsible." (Pl.'s Compl. 4). It further alleges that "DRC was not owed this money by GovGuam or otherwise entitled to obtain this money from GovGuam, and therefore owes this amount to GovGuam and should be required to pay it back to GovGuam." (Pl.'s Compl. 4) Plaintiff originally sought the entire amount of $11,132,160.00 plus accrued interest, claiming that "all of this [money] was wrongfully obtained by DRC from GovGuam." (Pl.'s Compl. 4) Plaintiff later adjusted its prayer for relief to the difference between the amount DRC received pursuant to the settlement ($11,132,160.00) and the amount originally claimed by DRC ($7,049,219.08), totaling $4,082,940.92.

On April 20, 2012, Defendant filed a Motion to Dismiss in this case pursuant to Guam Rules of Civil Procedure 12(b)(6). Plaintiff filed its Motion in Opposition to dismissal on June 13, 2012. The Court set a motion hearing for June 27, 2012, but the parties stipulated to continue the hearing until August 29, 2012. (Transcript JDAASCRA, June 27, 2012, at 10:27:40 a.m.) On September 18, 2012, Defendant filed its Reply to Plaintiff's Motion in Opposition. Thereafter, the parties stipulated to continuances several times. The Court finally heard the matter on April 9, 2013.

On June 24, 2013, this Court stayed proceedings pending the outcome of CV894-04. Judge Bordallo later dismissed that case with prejudice pursuant to Guam Rules of Civil Procedure 41(b), and denied the Plaintiff's Motion for Leave to Amend in order to include a

counterclaim. (Am. Decision and Order, Nov. 29, 2013, 10). Following the dismissal, Defendant objected to any further proceeding in this case. Plaintiff filed its Motion in Opposition on January 22, 2014.

Plaintiff now moves the Court for summary judgment, which it filed on February 26, 2014. Defendant filed its Opposition to Summary Judgment on March 26, 2014, and again requested the Court to dismiss the case. The Court heard oral arguments on April 29, 2014 and took the matter under advisement. On July 31, 2014, the Court further requested the parties to provide supplemental briefing on the issue of claim preclusion, which they timely did.

The Court now issues its decision on all matters.

## DISCUSSION

### I.    Defendant's Challenge to Plaintiff's Standing

As Defendant correctly points out, standing is a threshold issue which the Court must therefore address before any other inquiry. Guam Imaging Consultants, Inc. v. Guam Mem'l Hosp. Auth., 2004 Guam 15 ¶ 17 (citations omitted) (noting that "the fundamental principle of jurisdiction [is] that a party must have standing to litigate").

Standing may be predicated upon either "the statutory grant of such standing by the legislature or the common-law standing principles of Article III." Benavente v. Taitano, 2006 Guam 15 ¶ 20. Where standing is statutorily conferred, a court's inquiry begins with a "straight statutory construction of the statute to determine upon whom the Legislature conferred standing and whether the Petitioners here fall in that category." Id. ¶ 19 (internal quotation marks and citations omitted). Where standing is not conferred by statute, a court turns to "the common law principles of Article III." Id. ¶ 20.

Here, it is unclear whether, in passing the Government Claims Act, the Legislature conferred standing upon the Attorney General. In any event, the Court is satisfied that Plaintiff holds at least common law standing.

To establish common law standing, the burden is on the injured party to first demonstrate an "injury in fact." Guam Mem'l Hosp. Auth. v. Superior Court, 2012 Guam 17 ¶ 10 (citing Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 180 (2000)). The injury must be "concrete, particularized, and actual or imminent; it cannot be purely conjectural or hypothetical." Id. ¶ 12 (citations omitted). Secondly, the party must show "causation, in that the injury can be fairly traced to the challenged action taken by the

defendant." Id. (citations omitted). Lastly, similar to the second prong, the party must show "redressability, meaning it is likely and beyond mere speculation that a favorable decision will remedy the injury sustained." Id. (citations omitted).

Defendant argues that Plaintiff lacks standing because "[n]either the $7 million nor any other part of the money appropriated by Congress to pay DRC for the services it rendered so long ago was GovGuam's money." (Def.'s Am. Supplemental Br. 5:7-10). While Plaintiff has not responded to this claim in any file submitted to the Court, it mentioned during the summary judgment hearing that "the government has a right to know where the money went. The Attorney General has a right to monitor the payment of government funds . . . If anybody rouses the federal government about this, the government of Guam could end up owing that money . . . so there is a potential injury." (Transcript JDAASCRA, Apr. 29, 2014, at 11:11:19 a.m.).

While the "potential injury" of a future claim against Guam is clearly not imminent for the purposes of standing, the Court is inclined to agree with Plaintiff that the Attorney General has a right to monitor claims that fall within the Government Claims Act. Admittedly, Congress did not explicitly apportion the federal money to compensate Plaintiff itself; Plaintiff acted only as, in the words of the Governor at the time, a "pass-through" for the funds. But Defendant's argument ignores the important framework of the Government Claims Act.

The Act provides a mechanism to pierce sovereign immunity and sue government agencies for actions in contract or tort. 5 GCA § 6105. The Act outlines that the Attorney General serves as the Chief Claims Officer, id. § 6103(b), and that because he has "cognizance over all legal matters concerning the government of Guam," he "must be made aware of all suits against the government, or any of its parts, as soon as possible." Id. § 6209 cmt. (emphasis added).

Moreover, the Act both authorizes the Attorney General—and no one else—to settle a suit at any time before final judgment, and requires that such settlements are subject to the approval of the court. 5 GCA § 6210(a). This is in contrast to subsection (b), which allows autonomous agencies to settle without the approval of the court. Id. § 6210(b).[1]

---

[1] This distinction likely exists because autonomous agencies, as opposed to line agencies, have a "semi-independent character." Id. § 6210 cmt. In light of this independence, and the fact that the money autonomous agencies use to settle claims comes from their own operating funds rather than the general fund, id. § 6403, the need for oversight and court supervision is reduced.

Here, Defendant originally filed its claim pursuant to the Government Claims Act. During the claim's processing, Defendant, without notifying or obtaining the authorization of either the Attorney General or the court, settled the case with the Governor of Guam. The Court thus finds that this procedural circumvention constitutes injury to the Chief Claims Officer of the government, the Attorney General.

Causation and redressability are easily met. It was allegedly Defendant's execution of the settlement agreement outside the framework of the Government Claims Act that caused the injury. Similarly, a finding by this Court that the agreement was illegal and thus a nullity would redress that injury.

Alternatively, an additional injury is the settlement agreement itself. In its original complaint, Plaintiff alleges "[a]ll of this $11,132,160.00 was wrongfully obtained by DRC from GovGuam either by mistake, deceit, negligent or intentional misrepresentation, or connivance or conspiracy with the GovGuam official or officials responsible for execution of the 'Settlement Agreement.'" (Pl.'s Compl. 4). Plaintiff was party to the settlement agreement wherein it agreed to pay Defendant $11,132,160.00 in satisfaction of its debt. Settlement Agreement, March 14, 2008.

In considering the merits of settlement agreements, contract principles apply. Guerrero v. Moylan, 2002 Guam 18 ¶ 24. Generally, parties to a contract have standing to challenge the validity of that contract. See Ponchik v. King, 957 F.2d 608, 609 (8th Cir. 1992) (finding that the plaintiffs lacked standing to bring suit where they "were not parties to the contract or third-party beneficiaries"); see also In re Vic Suply Co., 227 F.3d 928, 930-31 (7th Cir. 2000) (Posner, J.) ("Ordinarily, only a party to a contract can challenge its validity."); Deutsche Bank Trust Co. v. Beesley, 2012 WL 5383555 (D. Haw. Oct. 30, 2012) (quoting 17A Corpus Juris Secundum § 169, available at Westlaw CJS Contracts § 169 (updated Sept. 2012)) ("[A] contract that is voidable is one where one or more of the parties have the power, by the manifestation of an election to do so, to avoid the legal relations created by the contract.").

This Court is not aware of any rule, nor does Defendant cite to one, that a payor must be entitled to otherwise keep the paid money to suffer injury from an illegal contract, or even that an injury must be monetary in nature to trigger standing. See Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. at 183 (internal quotation marks and citations omitted) (noting that it is sufficient that plaintiffs "are persons for whom the aesthetic and recreational values of the area will be

lessened"). It is of no import, then, that in paying the money owed to Defendant Plaintiff was acting only as a "pass-through."

In sum, because Plaintiff has alleged an injury-in-fact that was both caused by the settlement agreement and can be redressed by court action with respect to that agreement, it has standing. It would therefore be inappropriate to grant Defendant's Motion to Dismiss for lack of jurisdiction.

## II.      Preclusive Effect of <u>Res Judicata</u>

<u>Res judicata</u> can refer to either of two similar, yet distinct doctrines: issue preclusion and claim preclusion. <u>Reyes v. First Net Ins. Co.</u>, 2009 Guam 17 ¶ 20 (citations omitted). The former "bars a plaintiff from relitigating issues actually adjudicated in a prior proceeding." <u>Id.</u> (citations omitted). Claim preclusion, on the other hand, "treats a judgment, once rendered, as the full measure of relief to be accorded between the same parties on the same claim or cause of action." <u>Id.</u> (citations omitted); <u>see also</u> 6 GCA § 4209 (statutory codification of claim preclusion).

Here, with respect to both the November 29, 2013 dismissal of Defendant's original claim, CV0894-04, and the February 1, 2011 order to set aside the settlement agreement, the Court analyzes the possibility of claim preclusion. At the end of its inquiry, the Court finds that only the former has preclusive effect, thus breathing life into Defendant's Motion to Dismiss.

## A.      November 29, 2013 Amended Decision and Order

The November 29, 2013 dismissal of CV0894-04 and the denial of Plaintiff's Motion for Leave to Amend to include a counterclaim precludes the case at bar, whether through claim preclusion or because the counterclaim that Plaintiff failed to include was compulsory and, in effect, waived.

## 1.      Claim Preclusion of Involuntary Dismissal and Denial of Plaintiff's Motion for Leave to Amend to Include Counterclaim

As the Guam Supreme Court has noted, to establish claim preclusion one must demonstrate: "(1) a final judgment on the merits in an earlier suit, (2) an identity of the causes of action in both the earlier and the later suit, and (3) an identity of the parties or their privies in the two suits." <u>Zahnen v. Limtiaco</u>, 2008 Guam 5 ¶ 10 (citation omitted). Here, only the first requirement is in dispute.

Neither this Court, nor the Guam Supreme Court, has directly addressed the question of whether a dismissal for failure to prosecute a case where a potential counterclaim was not included, or a decision to dismiss a motion to include such a counterclaim, can ever be a "final judgment on the merits" for purposes of claim preclusion. While such a finding may not be warranted in every case, the Court finds it is in the present case.

### a. Judge Bordallo's Decision and Order Was a Final Judgment

Plaintiff first argues that Judge Bordallo's decision lacks preclusive effect because it was not "final." In support of its position, Plaintiff notes that "Rule 58 requires that a judgment be set forth on a separate document, but that has not been done in CV-0894-04." (Pl.'s Supplemental Br. 4). While Plaintiff does accurately state the Rule, see Guam R. Civ. P. 58, the Court finds that, notwithstanding the absence of a "separate document," Judge Bordallo issued a final judgment.

For a judgment to be final, it must "terminate the litigation on the merits of the case" or "constitute a final determination of the rights of the parties." Dep't of Revenue & Taxation v. Civil Serv. Comm'n, 2007 Guam 17 ¶ 23. In Department of Revenue & Taxation, the trial court entered a document "ordering that the case be remanded to the Civil Service Commission for evidentiary hearings." Id. The Guam Supreme Court found that because of the remand the document did not "constitute a final determination of the rights of the parties," and was thus not "final." Id.; see also Presto v. Lizama, 2012 Guam 24 ¶ 23 (citing People v. Cooper, 57 Cal. Rptr. 3d 389, 405 (Ct. App. 2007) ("[T]here must be a 'final judgment' or determination of an issue so no further judicial act remains to end the litigation.").

Rule 58 is based on its Federal Rules counterpart, see Guam R. Civ. P. 58, which was "intended to eliminate doubt as to what constituted a final judgment 'by requiring that there be a judgment set out on a separate document distinct from any opinion or memorandum which provides the basis for the entry of judgment.'" Baker v. S. Pac. Transp., 542 F.2d 1123, 1127 (9th Cir. 1976) (quoting Notes of Advisory Committee on 1963 Amendments to Rules).

Here, there is no doubt whether Judge Bordallo's Decision and Order was a final judgment and thus the policy justification for the Rule does not apply. The prior court's decision laid out very clearly that the "matter [was] dismissed with prejudice," and the Motion for Leave to Amend was denied. (Am. Decision and Order, Nov. 29, 2013, 10:22-23). Unlike in

Department of Revenue, here there is no ambiguity as to the respective rights of the parties going forward. The Court suspects that the failure to issue a separate document—by no means an uncommon practice in this jurisdiction—was merely due to judicial economy.[2]

**b.      Judge Bordallo's Decision and Order Was on the Merits**

A judgment is "on the merits" where "the substance of the claim is tried and determined." Presto v. Lizama, 2012 Guam 24 ¶ 26 (citations omitted) (finding a judgment to be "on the merits" where "the trial court conducted a full bench trial laden with findings of facts and conclusions of law"). The determination, for instance, must not be made "because the cause of action had not yet accrued nor on the ground of any technical defect." Id. (citations omitted).

As Plaintiff correctly points out, (Pl.'s Supplemental Br. 4), § 4209 is based on § 1908 of the California Code of Civil Procedure. 6 GCA § 4209; Cal. C.C.P. § 1908. Plaintiff goes on to note that in California "it is a fundamental rule that a judgment is not res judicata unless it is on the merits, and a dismissal for a delay in prosecution is not." (Pl.'s Supplemental Br. 4) (citing Gonsalves v. Bank of America, 105 P.2d 118, 120 (1940)); see also Cal. C.C.P. § 581.

That may be so, but the similarities between Guam and California begin and end with § 4209. In Guam, by contrast to California, dismissals for failure to prosecute are presumed to be judgments on the merits. As Rule 41(b) lays out:

> Involuntary Dismissal: Effect Thereof. For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against the defendant. Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19, operates as an adjudication upon the merits.

Guam R. Civ. P. 41(b) (emphasis added).[3] As echoed by the Guam Supreme Court, a "Rule 41(b) dismissal on the merits bars a plaintiff from refiling the same claim." Reyes, 2009 Guam

---

[2] Case law also suggests that a judgment may not final until it works its way through the appeals process. See Presto v. Lizama, 2012 Guam 24 ¶ 24. Here, however, neither party appealed, so the absence of a determination at the appellate level does not bar a finding of finality.

17 ¶ 24-25 (finding that because plaintiff refused to proceed at trial judgment was "akin to a dismissal for failure to prosecute under Rule 41(b), and, as a result, the dismissal operates as an adjudication on the merits"). This also extends to the dismissal of "any counterclaim, cross-claim, or third-party claim." Guam R. Civ. P. 41(c).

Here, Judge Bordallo, did not specify for his decision to operate as anything other than one on the merits. Indeed, he dismissed the matter with prejudice. (Am. Decision and Order, Nov. 29, 2013, 10:22-23). In the absence of any indication otherwise, the decision was thus on the merits.

Muddying the waters, however, is the fact that Plaintiff's counterclaim was never formally included in the case, and therefore arguably never dismissed for failure to prosecute. Thus, a potentially separate issue is whether the denial of a motion to amend to include a counterclaim can be "on the merits." Not all circuits have entertained the question, and those that have offer differing views.

The Eighth Circuit has clearly held that "the denial of a motion to amend a complaint in one action is a final judgment on the merits barring the same complaint in a later action." Prof'l Mgmt. Associates, Inc. v. KPMG LLP, 345 F.3d 1030, 1032-33 (8th Cir. 2003) (citations omitted). Importantly, "this is so even when denial of leave to amend is based on reasons other than the merits, such as timeliness." Id. (citations omitted) (finding it "irrelevant" that district court denied leave to amend because of party's noncompliance with procedure).

The Second Circuit has taken a slightly different approach, distinguishing between denials of leave to amend and the principles underlying compulsory counterclaims. See N. Assurance Co. of Am. v. Square D Co., 201 F.3d 84, 87-88 (2d Cir. 2000). In Northern Assurance, the court noted that the "typical situation where claim preclusion would apply after a denial of leave to amend" is one where "the plaintiff is seeking to add additional claims against the same defendant and leave to amend is denied without reaching the merits of the claim." Id.[4]

---

[3] It is worth briefly noting that "although the rule is phrased in terms of dismissal on the motion of the defendant, it is clear that the power is inherent in the court and may be exercised sua sponte whenever necessary to achieve the orderly and expeditious disposition of cases." Reyes, 2009 Guam 17 ¶ 22 (internal quotation marks and citations omitted).

[4] The Court can neither find nor imagine any reason why it should make a difference whether it is the plaintiff or defendant that moves for leave to amend to include either additional claims or a counterclaim.

The court went on to note that "courts are generally in agreement that these new claims should be barred." Id. (citations omitted) (listing related cases).

In the eyes of the Second Circuit, the bar is not based on the denial, but rather on the requirement that a "plaintiff must bring all claims at once against the same defendant relating to the same transaction or event." N. Assurance Co. of Am., 201 F.3d at 87-88. Thus, the denial of the motion for leave to amend acts as "no more than a proxy to signify at what point claims have been forfeited due to a plaintiff's failure to pursue all claims against a particular defendant in one suit;" the bar thus turns on "normal principles of claim preclusion, i.e., whether [a party] was required to bring its claims in the initial suit." Id.

Later that term the Second Circuit clarified its position in Curtis v. Citibank, N.A., 226 F.3d 133 (2d Cir. 2000). The court first noted that while only denials on the merits preclude subsequent litigation, claims in a second action that "ar[i]se out of the same events as those alleged in the first action were barred." Id. at 139-40 (internal quotation marks omitted).

Other circuits have followed the above practices to varying degrees. See Huck v. Dawson, 106 F.3d 45, 49-50 (3d Cir. 1997) (quoting Restatement (Second) of Judgments § 25, cmt. b (1982)) ("It is immaterial that the plaintiff in the first action sought to prove the acts relied on in the second action and was not permitted to do so because they were not alleged in the complaint and an application to amend the complaint came too late."); Nilsen v. City of Moss Point, 701 F.2d 556, 563 (5th Cir. 1983) (second related claim untimely advanced in first suit precluded in second); New Britain Mach. Co. v. Yeo, 358 F.2d 397, 410-11 (6th Cir. 1966) (finding the district court "did not abuse its discretion in refusing to allow the filing of the counterclaim so late in the proceeding" and was not required to permit the defendant to "relitigate the case, either by a belated counterclaim or by a new and separate action"); cf. Hartsel Springs Ranch of Colorado, Inc. v. Bluegreen Corp., 296 F.3d 982, 990 (10th Cir. 2002) (noting that while denial of leave to amend a complaint may preclude in some cases, it does not apply where the claims "need not have been brought in the first suit at all").

The failure of a party to appeal the denial of its motion for leave to amend can also be a relevant factor in that denial's preclusive effect. See Hatch v. Trail King Indus., Inc., 699 F.3d 38, 45 (1st Cir. 2012) (internal quotation marks, alterations, and citations omitted) ("When a party chooses to move for leave to amend its complaint and then not to appeal denial of that

motion, the party is not entitled to a second opportunity in a later action to litigate the claim."). The First Circuit has held, instead, that the party's proper recourse is to "appeal, not to start a new action." Id. (internal quotation marks omitted).

In light of the above survey, the Court is satisfied that in some cases the denial of a motion for leave to amend to include a counterclaim can have preclusive effect for subsequent suits. To determine whether such a result is appropriate here, it is necessary to consider the record before the Court.

In its Brief, Plaintiff mischaracterizes the extent to which the prior court considered the case before it. Plaintiff suggests that Judge Bordallo merely "threw up his hands and, blaming both sides, dismissed the case for failure to prosecute," (Pl.'s Supplemental Br. 2-3), and "denied [the motion for leave to amend] summarily, probably thinking collection, if warranted, would occur in this case." (Pl.'s Supplemental Br. 3). Plaintiff fails to even acknowledge Judge Bordallo's Decision and Order. (Am. Decision and Order, Nov. 29, 2013). In fact, rather than deciding "summarily," Judge Bordallo explained at length his reasons for both denying Plaintiff's Motion for Leave to Amend and dismissing the entire matter. While it would be inappropriate for this Court to second guess that decision, a brief review of Judge Bordallo's findings illuminates the instant case.

In denying Plaintiff's Motion, Judge Bordallo first noted that a court should consider "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." (Am. Decision and Order, Nov. 29, 2013, 7:18-8:5) (citing Arashi & Co., Inc. v. Nakashima Enterprise, Inc., 2005 Guam 2 ¶ 16).

The timeline outlined by the court was "less than aspirational;" Plaintiff's filed its Motion to Amend more than four years after the original answer. (Am. Decision and Order, Nov. 29, 2013, 8:6-11). The court was not persuaded by Plaintiff's argument that it "could not have requested amendment sooner because, although the settlement agreement was filed on June 10, 2008, it was not set aside, and therefore their cause of action did not arise until the entry of the Court's February 2, 2011 decision." (Am. Decision and Order, Nov. 29, 2013, 8:15-26). Rather, the counterclaim "cannot be reasonably argued to have been contingent upon the Court's first setting aside the settlement agreement distributing those funds." (Am. Decision and

Order, Nov. 29, 2013, 8:18-20). Plaintiff admits that, then, "the Motion to Amend filed in CV0894-04 was continued several times." (Pl.'s Supplemental Br. 2).

Similarly, in dismissing the matter pursuant to Rule 41(b), the court noted that "since the commencement of this case there has been a pattern of delay." (Am. Decision and Order, Nov. 29, 2013, 9:25-26). Both parties "repeatedly failed to timely agree upon and set hearing dates for their motions," in addition to "repeatedly fil[ing] numerous stipulations and requests to continue deadlines and hearing dates past a time for their reasonable disposition." (Am. Decision and Order, Nov. 29, 2013, 9:26–10:1). Moreover, even upon the court's order for the parties to contact chambers to set a hearing, "more than one year ha[d] passed without either Party complying with the Court's order." (Am. Decision and Order, Nov. 29, 2013, 10:13-16).[5]

Furthermore, Plaintiff does not adequately explain why it even filed the present case, CV0340-12. Plaintiff merely defends the action as coming "from an abundance of caution." (Pl.'s Supplemental Br. 2). The Court is of the opinion, however, that the more cautious step would have been for Plaintiff to more diligently pursue its allegations as a counterclaim to the original suit. Moreover, it is unclear on what basis Plaintiff claims Judge Bordallo "denied [the Motion] summarily, probably thinking collection, if warranted, would occur in [CV0340-12]." There is no reason to think Plaintiff would take a separate claim any more seriously than a counterclaim.

In light of the above, allowing the current claim to go forward would have perverse consequences both here and in future cases. Such a result carries the risk of incentivizing this sort of behavior, whether it is gamesmanship or simply indifference. The Court finds Plaintiff should not be rewarded where it was also to blame for bringing the prior suit to a halt. See Johnson v. SCA Disposal Serv. of New England, Inc., 931 F.2d 970 (1st Cir. 1991) ("[W]e decline to reward [a party] for its own delinquency [in filing a motion to amend] by permitting [a separate suit] to go forward.").

---

[5] Again, although the Court does not intend to evaluate the prior court's decision, it is worth mentioning that based on the delay by both parties the dismissal with prejudice was adequately supported by the case law of both Guam and other jurisdictions. See Reyes, 2009 Guam 17 ¶ 23 (listing valid involuntary dismissals for failure to prosecute with similar fact patterns).

The Court thus finds that Judge Bordallo's denial of Plaintiff's Motion for Leave to Amend in CV0340-12 precludes this case.[6]

### 2. Failure to Include a Compulsory Counterclaim

Even assuming the dismissal of the prior suit or denial of the Motion for Leave to Amend has no preclusive effect, a closely related yet alternative basis for barring Plaintiff's case is its failure to include its allegations as a compulsory counterclaim to the prior suit.

It is axiomatic that "claims coming within the definition of 'compulsory counterclaim' are lost if not raised at the proper time." Baker v. Gold Seal Liquors, Inc., 417 U.S. 469 n. 1 (1974); see also Dragor Shipping Corp. v. Union Tank Car Co., 378 F.2d 241, 244 (9th Cir. 1967) ("[A] party who fails to plead a compulsory claim against an opposing party is held to have waived such claim and is precluded by res judicata from bringing suit upon it again."); Zahnen, 2008 Guam 5 ¶ 10 (citations omitted) ("Claim preclusion prevents litigation of a claim that was not litigated in a previous suit, but could have been."). The rule "follows from policy principles behind the application of claim preclusion, which includes avoiding multiplicity of lawsuits and ensuring an end to litigation." Presto, 2012 Guam 24 ¶ 40.

Based on the Federal Rules of Civil Procedure, Guam has codified this in Rule 13 of its own Rules of Civil Procedure:

> A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction. But the pleader need not state the claim if . . . at the time the action was commenced the claim was the subject of another pending action . . .

Guam R. Civ. P. 13(a). When determining whether a counterclaim qualifies as compulsory, courts should consider "the aggregate of connected operative facts that can be handled together conveniently for purposes of trial to determine if they were founded upon the same transaction,

---

[6] This ruling may run counter to the practices of at least Michigan. Michigan has an enumerated exception providing that "[i]f a motion to amend to state a counterclaim or cross-claim is denied, the litigation of that claim in another action is not precluded unless the court specifies otherwise." MCR 2.203(E). Here, it is arguable whether the court specified preclusive effect. However, Guam, the Federal Rules, and, to the extent it is persuasive, California chose not to enumerate any such exception.

arose out of the same nucleus of operative facts, and sought redress for essentially the same basic wrong." Presto, 2012 Guam 24 ¶ 39 (internal quotation marks and citations omitted).

There are a few limited exceptions to the rule. If a counterclaim arises after the relevant pleading, for instance, the counterclaim "may, with the permission of the court, be presented as a counterclaim by supplemental pleadings." Guam R. Civ. P. 13(e) (emphasis added). Secondly, if the omission was due to "oversight, inadvertence, or excusable neglect, or when justice requires, the pleader may by leave of court set up the counterclaim by amendment." Guam R. Civ. P. 13(f) (emphasis added).[7]

Here, Plaintiff failed to raise its compulsory counterclaim at the proper time during the prior proceeding. Because it concerned the same disputed money as Defendant's claim, the counterclaim "[arose] out of the transaction or occurrence that is the subject matter of the opposing party's claim." Guam R. Civ. P. 13(a). Secondly, the counterclaim would not have "require[d] for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction." Id.

Lastly, the claim does not fall within any of the rule's enumerated exceptions. Before Judge Bordallo, Plaintiff argued that it could not bring its counterclaim prior to the setting aside of the settlement agreement. Like the prior court, however, this Court is not persuaded that the counterclaim was "contingent upon the Court's first setting aside the settlement agreement distributing those funds." (Am. Decision and Order, Nov. 29, 2013, 8:18-20). Rather, Judge Bordallo found that "[a]t a minimum the file reveals that Defendants in this case were made aware of the settlement agreement on June 10, 2008." (Am. Decision and Order, Nov. 29, 2013, 8:20-22). Even with this knowledge, Plaintiff continued to wait an undue length of time before filing its Motion to Amend. Moreover, a court's decision whether to grant supplemental pleadings or an amendment is importantly a discretionary one; the prior court duly exercised its discretion in denying the Plaintiff's Motion.

The facts here encapsulate the very reason why the Federal Rules adopted Rule 13(a). As phrased by the Supreme Court, the Rule "was particularly directed against one who failed to

---

[7] This exception is based on a similar subsection in the Federal Rules of Civil Procedure that was later abrogated. Fed R. Civ. P. 13(f) (abrogated).

assert a counterclaim in one action and then instituted a second action in which that counterclaim became the basis of the complaint." Southern Construction Co., Inc. v. Pickard, 371 U.S. 57, 60 (1962).

Thus, Plaintiff's failure to timely plead its counterclaim in the initial case, notwithstanding the denial of its Motion for Leave to Amend, further precludes it from raising the claim in this subsequent suit.

## B. February 1, 2011 Decision and Order to Set Aside Settlement Agreement

Even after dismissing Plaintiff's claim, the Court's work is not done; the Court must still determine whether the February 1, 2011 Decision and Order to set aside the settlement agreement has any preclusive effect. In the absence of any dispute, this Court finds that the decision to set aside the settlement agreement has no preclusive effect.

Judge Lamorena originally presided over the prior suit, CV0894-04. He set aside the settlement agreement before he later recused himself from the proceeding upon Defendant's objection. (Decision and Order, Feb. 1, 2011). Defendant argues that because Judge Lamorena submitted his "consent and non-opposition to [Defendant's] Objection," the decision has no preclusive effect. (Def.'s Am. Supplemental Br. 3:12-14). Similarly, Plaintiff admits that the February 1 decision has no preclusive effect, noting that "Judge Lamorena declared the settlement agreement illegal, but did not issue a judgment." (Pl's Supplemental Br. 2-3).

The issue turns not on the timing of the Judge's recusal, but rather the timing of the grounds that led to the recusal. While relevant case law in Guam is sparse, it supports this outcome. For instance, in Lujan v. Lujan, 2000 Guam 21 ¶ 21, a judge pro tempore was wrongfully appointed and thus not qualified to preside over a case. Before granting the objecting party a new trial, the Guam Supreme Court found that "any actions taken by [the judge] after [the date of appointment] in this case are void and without effect." Id. 14. Crucially, the pivotal moment was the time of appointment, not objection to the appointment.

California practice is also persuasive on the subject. Christie v. City of El Centro, 37 Cal. Rptr. 3d 718 (Cal. Ct. App. 2006). The Christie court overturned a disqualified judge's decision that he made prior to disqualification. Id. at 725. The court went on to note that "disqualification occurs when the facts creating disqualification arise, not when disqualification

is established." Id. (citations omitted); see also Giometti v. Etienne, 28 P.2d 913, 914 (Cal. 1934) (noting the fact of disqualification controls, not judicial establishment of disqualification); Butler v. Biven Software, Inc., 473 S.E.2d 168, 170 (Ga. Ct. App. 1996) ("By the nature of [a judge's] recusal, any actions following his recusal or after he should have recused himself are naturally void.").

The Court is thus satisfied that because Judge Lamorena ultimately recused himself from the proceeding his decision to set aside the settlement agreement was void with no preclusive effect in the instant case.

## CONCLUSION

In light of the foregoing, the Court **GRANTS** Defendant's Motion to Dismiss on the basis of claim preclusion. Because the case is dismissed with prejudice, the Court need not determine the merits of Plaintiff's Motion for Summary Judgment, and it is **DENIED**.

**SO ORDERED** this _21_ day of OCTOBER, 2014.

_[signature]_

HONORABLE ANITA A. SUKOLA
Judge, Superior Court of Guam

**SERVICE VIA COURT BOX**

I acknowledge that a copy of the original hereto was placed in the court box of:
AG's OFFICE (CIVIL)
LUJAN AGUIGUI + WOLFF
Date: 10/21/14 Time: 1640
_A. A. Santos_
Deputy Clerk, Superior Court of Guam